**EXHIBIT D**

**(Kuntz Claim)**

Silicon    06-10977

**FORM B10** (Official Form 10) (04/05)

| UNITED STATES BANKRUPTCY COURT _Southern_ DISTRICT OF _New York_ | PROOF OF CLAIM |

| Name of Debtor: CRAY RESEARCH LLC | Case Number: 06-10979-BRL |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

Filed: USBC - Southern District of New York
Silicon Graphics, Inc. Et Al.
06-10977 (ALG)    0000000792

Name of Creditor (The person or other entity to whom the debtor owes money or property):
WILLIAM KUNTZ

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

Name and address where notices should be sent:
C/ Ansell
25 Alpenit Farm Rd
Hopkinton Mass 01748

☑ Check box if you have never received any notices from the bankruptcy court in this case.

☐ Check box if the address differs from the address on the envelope sent to you by the court.

Telephone number: 508-435-1850

THIS SPACE IS FOR COURT USE ONLY

| Account or other number by which creditor identifies debtor: | Check here ☐ replaces | a previously filed claim, dated:_____ if this claim ☐ amends |

**1. Basis for Claim**
- ☐ Goods sold
- ☐ Services performed
- ☐ Money loaned
- ☐ Personal injury/wrongful death
- ☐ Taxes
- ☑ Other _____

- ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
- ☐ Wages, salaries, and compensation (fill out below)
  Last four digits of SS #: _____
  Unpaid compensation for services performed
  from _____ to _____
      (date)        (date)

**2. Date debt was incurred:** Unknown See attachment

**3. If court judgment, date obtained:**

**4. Total Amount of Claim at Time Case Filed:** $ 892,000 _____ _____ _____
       (unsecured)    (secured)    (priority)    (Total)
If all or part of your claim is secured or entitled to priority, also complete Item 5 or 7 below.
☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**5. Secured Claim.**
☐ Check this box if your claim is secured by collateral (including a right of setoff).

Brief Description of Collateral:
☐ Real Estate    ☐ Motor Vehicle
☐ Other _____

Value of Collateral: $ _____

Amount of arrearage and other charges at time case filed included in secured claim, if any: $ _____

**6. Unsecured Nonpriority Claim** $ 892,000
☐ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**7. Unsecured Priority Claim.**
☐ Check this box if you have an unsecured priority claim

Amount entitled to priority $ _____
Specify the priority of the claim:
- ☐ Wages, salaries, or commissions (up to $10,000),* earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3).
- ☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(4).
- ☐ Up to $2,225* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(6).
- ☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(7).
- ☐ Taxes or penalties owed to governmental units-11 U.S.C. § 507(a)(8).
- ☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(___).
*Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment. $10,000 and 180-day limits apply to cases filed on or after 4/20/05. Pub. L. 109-8.

**8. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**9. Supporting Documents:** *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**10. Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim

THIS SPACE IS FOR COURT USE ONLY

RECEIVED
AUG - 2 2006
CLAIMS PROCESSING CENTER
USBC, SDNY    2

| Date 7/28/06 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any): William Kuntz |

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

Cray Splits Operations Into 2 Rival Entities
By JOHN MARKOFF
*New York Times (1857-Current file);* May 16, 1989; ProQuest Historical Newspapers The New York Times (1851 - 2003)
pg. D1

# Cray Splits Operations Into 2 Rival Entities

### By JOHN MARKOFF

In a dramatic split, Cray Research Inc. said yesterday that Seymour R. Cray, its founder and the nation's foremost supercomputer designer, would form a company that would be its direct competitor in the development of the world's most powerful computers.

Cray Research will provide the financing for its new rival, saying it believed the competition was essential if the United States is to continue its leadership of the supercomputer industry.

The remarkable breakup of what is widely viewed as one of the nation's pre-eminent high-technology companies comes a month after the Control Data Corporation withdrew from the supercomputer business.

The new company, the Cray Computer Corporation, will be based in Colorado Springs, where Mr. Cray recently relocated with a team of designers to manufacture the Cray-3 supercomputer.

### Assets Will Be Transferred

Under the plan approved yesterday by its board, Cray Research will transfer approximately $50 million in equipment, or about 5 percent of its assets, to the new company. Cray Computer will also receive up to $100 million in operating funds over two years. Cray Research will own about 10 percent of Cray Computer.

The Cray-3 supercomputer is powered by gallium-arsenide chips that have yet to prove their capabilities. Many industry experts believe the new technology will be the linchpin of America's effort to build the world's fastest computers. Cray Research Inc., however, will base its next supercomputer on a less-risky silicon design.

The original company, which Mr. Cray founded in 1972, is based in Minneapolis. It will concentrate on the company's existing computers, which include the X-MP, the Cray-2 and the Y-MP, as well as a new silicon-based supercomputer called the C-90.

Behind the split was Cray Research's apparent belief that it could not support two separate supercomputer projects simultaneously.

John A. Rollwagen, Cray's chairman, said yesterday that the company had been concerned about Japanese competition and was uncertain about its ability to finance competing supercomputer designs that could each cost more than $200 million.

In September 1987 Cray canceled a third project led by the computer designer Steve S. Chen. Mr. Chen has since formed a company, Supercomputer Systems Inc. and received financial backing from the International Business Machines Corporation.

Mr. Rollwagen said he looked forward to competing directly against Mr. Cray at some time in the future.

*Continued on Page D8*

Reproduced with permission of the copyright owner. Further reproduction prohibited without permission.

# Cray Splits Operations Into 2 Rival Companies

*Continued From First Business Page*

"I think it's very exciting," he said. "No. 1, I believe in competition; it's a vitalizing factor for everybody. No. 2, I believe there will be a supercomputer business in the 90's. You can't have an industry with just one profitable company in it."

Financial analysts said they were uncertain about the breakup. In the past Mr. Cray has been viewed as a crucial leader in the company he founded.

"Our board decision today to create a second United States supercomputer company will help this country maintain its dominance in this vital technology," Mr. Rollwagen said. "If I was sitting in Japan a couple of weeks ago what I saw was a United States supercomputer industry that was in a shambles. If this all plays out as I think it will, the Japanese are now looking at a revitalized Cray Research and a second equally strong company."

Federal officials reacted cautiously to the news.

"Does the sum of the parts add up to something greater than the whole?" said Norman H. Kreisman, an adviser on international technology and a supercomputer expert at the Department of Energy. "I don't see that here. Will there be any fundamental change in technology? Not on the surface. Is one of these two companies going to make a deal somewhere else? It remains to be seen."

Under the arrangement for creating the new company, 90 percent of the stock in Cray Computer will be distributed to shareholders of Cray Research Inc., on a tax-free basis.

Cray Research will keep a 10 percent ownership and said the plan is subject to approval by the Internal Revenue Service. It also requires a fairness opinion from Morgan Stanley & Company, the investment banker for Cray Research; completion of an agreement between the companies and regulatory clearance.

In the interim, Cray Computer will operate as a subsidiary of Cray Research.

The two companies will enter into cross-licensing and technology transfer agreements involving both hardware and software.

Mr. Rollwagen said he believed Cray Research had the financial resources to give Mr. Cray enough financing to complete the development of his supercomputer without going to outside financing.

But several analysts said the success of the project depended on Mr. Cray's ability to raise financing for his spinoff venture.

"It depends upon how well Seymour Cray is able to raise more capital," said Chris Willard, a supercomputer industry analyst at Dataquest Inc. in San Jose, Calif. "It might provide a mechanism for two national supercomputer efforts. "It's really going to depend on how the American capital providing community decides to go after this. If they only back one it won't make any difference. If they back both it will make United States more competitive.

Mr. Cray will be chairman of the new Cray Computer Corporation. Neil Davenport, vice president of Colorado operations for Cray Research, has been named chief operating officer.

In recent months the departure of Control Data from the market and announcements of new supercomputers from Japanese companies has heightened fears that the United States' lead was in jeopardy in an industry that Mr. Cray almost singlehandedly created.

Supercomputers are increasingly seen as a strategic technology because of their role as design tools in creating commercial products, pharmaceuticals and scientific research as well as in developing military weapons.

"What strikes me is the unique nature of this resolution," said Gary Smaby, an analyst in Minneapolis. He said he did not know how the market would react to the deal, which was announced after the stock market closed. "There has never been a deal done like it," he said.

Mr. Rollwagen said he had discussed the split for the first time three weeks ago when he flew to Colorado Springs because he felt that things were not going smoothly.

He said both he and Mr. Cray realized that the company's product lines did not fit together smoothly and that they presented Cray customers with a confusing picture.

According to one Cray Research customer, Mr. Cray had been unhappy with the way the company was proceeding for some months. The customer said he had been called to Colorado Springs last fall, along with other major customers, for a session with Mr. Cray. "I could tell that something was wrong at the time," he said.

While public attention has focused on the Cray-3 supercomputer project in the last year, Mr. Rollwagen said that after Mr. Cray left to create the manufacturing group in Colorado Springs, the group designing another competing machine called the C-90 had become revitalized.

That computer is a direct descendent of the Y-MP computer line, currently the company's most powerful computer. He said that because it was being manufactured in silicon technology rather than gallium arsenide, it represents less of a gamble than the Cray 3 project.

Reproduced with permission of the copyright owner.  Further reproduction prohibited without permission.

A Spy Agency Gives Contract to Cray Computer
By JOHN MARKOFF
*New York Times (1857-Current file)*; Aug 18, 1994; ProQuest Historical Newspapers The New York Times (1851 - 2003)
pg. D3

# A Spy Agency Gives Contract to Cray Computer

### By JOHN MARKOFF

The Federal Government gave a small vote of confidence to the struggling supercomputer industry yesterday when the National Security Agency awarded the Cray Computer Corporation a $4.3 million contract to help develop what might become the world's ultimate spying machine.

The contract is the first significant revenue obtained by Cray Computer, a Colorado Springs company founded five years ago by the supercomputer pioneer Seymour Cray after he left the Cray Research Corporation.

As part of the agreement, Cray Computer will invest $4.5 million, and the agency will provide about $400,000 in software-consulting services.

The contract signifies the shifting patterns of Government spending in the post-cold-war era — changes that have hurt supercomputer makers as budgets for weapons design and manufacturing decline. Government cutbacks in research spending and supercomputer purchases have taken a special toll on small companies like the Thinking Machines Corporation, which filed for bankruptcy protection earlier yesterday.

But as the new Cray Computer contract indicates, high-tech intelligence programs retain a high priority, leaving a role for the information-processing power of supercomputers.

**Spy Agency Isn't Talking**

The N.S.A., the Government's electronic-spying agency, would not comment on how it planned to use the new computer. But industry executives familiar with the technology said that new generations of supercomputers could expand upon monitoring equipment supplied to the Colombian Government last year by the Drug Enforcement Agency.

The Colombian police were able to track down the drug-cartel leader Pablo Escobar de Gaviria after he called his family on a cellular phone. The electronic-monitoring equipment was programmed to recognize his voice, and it led to his location, where Mr. Escobar died in a gun battle.

Applications for the new machines might also include faster ways of processing information gleaned from eavesdropping on foreign military communications, and high-speed interpretation of spy-satellite photos.

The new Cray computer will be a hybrid design called the Cray 3/Super Scalable System. It will link two array of chips containing half a million inexpensive processors that were designed by a Government laboratory connected with the N.S.A.

## In a parsimonious age, high-tech intelligence can still find backers.

The agency has pursued computer-based surveillance technology since at least 1957, when it contracted with I.B.M. to build a specialized computer, code-named Harvest, for use in intelligence analysis.

Two decades later, shortly after Mr. Cray founded Cray Research, the N.S.A. was an early customer. At the agency's request in 1976, according to Cray research officials, Mr. Cray added a specialized instruction known as "population count," useful for sifting through large amounts of data. It has since found its way into commercial computer designs.

**A Legend in a Different Time**

Mr. Cray is a legend in the industry for his designs, but he is obviously out of step with most of today's computers. Since leaving, Cray Research, which he founded, he has concentrated on a new generation of machines costing as much as $15 million.

But he has been caught by an industry transition away from his fast and expensive processors toward systems based on thousands of inexpensive microprocessors, known as massively parallel computers. The Cray 3 supercomputer, two years late to market when it appeared last year, has not yet found a customer, and Cray executives said they were planning their hopes for survival on the Cray 4, due to be completed in the first quarter of next year.

Cray Computer's stock rose 56 cents a share yesterday, closing at $2.06 in Nasdaq trading.

In July, the company said it was looking for a partner to make an equity investment in exchange for access to its technology. It obtained $17.5 million in emergency financing in June, staving off financial collapse.

During the second quarter, it lost $11.1 million, a slight improvement from the $11.9 million in the second quarter of 1993.

Industry analysts remained skeptical about Cray's prospects for surviving the shake-out in supercomputers.

"True, it provides an opportunity for Cray," said Gary Smaby, a Minneapolis consultant. "But whether there is any other entity on the planet besides the N.S.A. that is interested in a 512,000-processor array remains to be seen."

Reproduced with permission of the copyright owner.  Further reproduction prohibited without permission.

Cray's Future Without Cray
By JOHN MARKOFF
*New York Times (1857-Current file);* May 21, 1989; ProQuest Historical Newspapers The New York Times (1851 - 2003)
pg. F1

# Cray's Future Without Cray

**By JOHN MARKOFF**

## The big supercomputer maker loses its brilliant founder at a difficult time, but it may wind up stronger than before.

CHIPPEWA FALLS, Wis. — FOR the third time in his career, Seymour R. Cray is starting over. In breaking away last week from Cray Research Inc., the supercomputer company he founded 17 years ago, the brilliant and reclusive computer designer once again is fleeing a company that outgrew his need for a simple, unfettered environment.

Bankrolled by Cray Research, the acknowledged father of supercomputers will now head his own high-tech "boutique," the Cray Computer Corporation, based in Colorado Springs, where he has already set up a development and man-ufacturing operation. The betting is that the 63-year-old engineer, who has succeeded in building the world's fastest computer three times, will succeed this time, too.

But what of the company he is leaving behind? And does the extraordinary breakup of what has come to be viewed as one of America's high-tech jewels help or harm the United States supercomputer industry?

For Cray Research, it would seem that the departure of Mr. Cray could not have come at a worse time. For years Cray Research has been the leading producer of the futuristic machines that have become the world standard of technological prowess. Not only are these machines — defined as the fastest computers at any given time — essential for basic scientific research and for designing advanced military hardware, they have also become vital competitive weapons in more than a dozen industries. Pharmaceutical companies use them to produce new drugs, for example, and they are essential for designing the most efficient aircraft.

But sales and revenues are down this year at Cray Research as major supercomputer users like auto makers and oil companies have slowed capital spending and the Government has cut back on its military budget.

Making matters worse, Cray Research is being significantly challenged — and from many directions. From overseas, the Japanese, who failed in earlier attempts to take on Cray Research, are again taking aim. At home, the International Business Machines Corporation and a slew of small competitors are jockeying for a piece of the market that the company has long dominated.

But Cray Research may prove to be stronger without Mr. Cray than with him. Freed of the tension and financial strain of trying to accommodate Mr. Cray's entrepreneurial style, Cray Research can now get on with the business of being a global player, industry experts and analysts say. Investors apparently were starting to come around to that view late last week, helping the company's stock rebound a bit after an initial slide.

"It was a brilliant decision," said David Wu, a financial analyst who follows the computer industry for S. G. Warburg & Company. "It's a case of the parts being worth more than the whole."

Nonetheless, it is a calculated gamble. By choosing a strategy of evolutionary technological growth over the revolutionary leaps that the Seymour Crays of the industry represent, Cray Research runs the risk of someday being passed by. For now, though, the safer choice protects the company's strong customer base.

The split may even help to shore up America's supercomputer industry as a whole. "From the country's stand-point," Mr. Wu said, "it's the best thing that could happen."

Indeed, Washington may finally adopt a national policy to help insure America's lead in producing the machines, shaken into action by Cray's dramatic restructuring and last month's announcement that the Control Data Corporation was dropping out of the super-

*Continued on Page 8*



Seymour R. Cray





## Cray Is the Fastest . . .

Actual obtained performance speed of each company's fastest supercomputer, in megaflops*. Numbers of processors are in parentheses.

\* One megaflop equals a million floating-point operations a second. A floating-point operation is a basic computer arithmetic operation, like multiplication.

| Cray Y-MP/832 | NEC SX-2 | I.B.M. 3090/600S VF | Fujitsu VP-200 | Hitachi NAS AS/EX 90 |
|---|---|---|---|---|
| 2,144 (8) | 885 (1) | 518 (6) | 422 (1) | 251 (3) |

Source: Jack Dongarra, Argonne National Laboratory

## . . . But Is It Too Small To Keep Its Lead?

Assets at year-end 1988, except where noted, in billions of dollars.

\* For fiscal year ended March 31, 1988, in U.S. dollars based on exchange rate with the yen on May 18, 1989.

| Cray | Fujitsu* | NEC* | Hitachi* | I.B.M. |
|---|---|---|---|---|
| $1.0 | | | | |

Source: Company reports
The New York Times/May 21, 1989

Reproduced with permission of the copyright owner. Further reproduction prohibited without permission.

# Cray's Future Without Cray: Building by Evolution

Continued from page [...]

## The Supercomputer Competitors



Estimated 1988 market share, based on $1.1 billion of revenues for computers shipped from factories.

- U.S. Companies
- Japanese Companies

Cray Research 55%
I.B.M. 15%
Hitachi 3%
Control Data/ETA 8%

Source: Dataquest

Blocked due to copyright. See full page image or microfilm.

Cray Research's chairman, John A. Rollwagen, left, and operations chief, Lester T. Davis.

## Two Crays Out of One

Last week, Cray Research Inc. announced its decision to split into two separate companies. Below are details of the two new competitors in the supercomputing industry.

| | Cray Research Inc. | Cray Computer Corp. |
|---|---|---|
| Chairman | John A. Rollwagen | Seymour R. Cray |
| Headquarters | Minneapolis | Colorado Springs |
| Employees | 5,400 | 250 |
| Assets | $840 million* | $50 million |
| Founded | 1972 | 1989† |
| Main Products | Cray X-MP, Cray Y-MP, Cray-2, C-90 | Cray-3 |
| Strategy | To continue to build the world's fastest supercomputers, using silicon-based semiconductors, for a broad range of commercial and government customers. | To finish development of the Cray-3 supercomputer, which is based on unproven gallium arsenide semiconductor technology, and sell it to the most sophisticated computer customers, principally at U.S. Government laboratories. |

Source: Company reports

### Taking the Long View

### Big Blue's Threat

### An Insurance Policy

### Pulling Back the Veil

Reproduced with permission of the copyright owner. Further reproduction prohibited without permission.

**Computer Gains Driven by Consumer Products**
JOHN MARKOFF
*New York Times (1857-Current file);* Jun 21, 2001; ProQuest Historical Newspapers The New York Times (1851 - 2003)
pg. C4

# Computer Gains Driven by Consumer Products

### By JOHN MARKOFF

The twice-annual ranking of the world's 500 fastest computers, being issued today, shows that the United States still has a significant lead in building powerful supercomputers

But the list is also an indication that increasingly the world of supercomputing is no longer at the cutting edge of computing technology The remarkable increases in speed and the falling prices of microprocessors and memory chips are turning the modern computing industry upside down. Powerful new technologies are increasingly being introduced first in consumer electronics rather than the scientific and military computers that once dominated the computer world

The world's fastest computer, known as ASCI White, is still a machine financed by the military, made by I.B.M. and installed at Lawrence Livermore National Laboratory But it has been assembled from thousands of microprocessors whose individual speed is outdated compared with even most desktop PC's of the last two years

Driven by the rapid pace of consumer product development, the so-called post-PC world is now moving at a much faster pace than the traditional high-end scientific computing markets

The new rankings also demonstrate that the high-end supercomputing industry in the United States has increasingly become dominated by Pentagon priorities, focused on the simulation of nuclear weapons and the preservation of the nation's strategic arsenal.

As a consequence, the world's four fastest supercomputers can be found at the three Department of Energy national laboratories — Lawrence Livermore, Sandia and Los Alamos — where they are used as part of the classified Accelerated Strategic Computing Initiative, or ASCI, a military program aimed at enhancing modeling and simulation abilities that are needed to maintain the United States nuclear stockpile.

In recent years some United States scientists have warned that while money is still being spent to develop supercomputers, the country is falling behind in a variety of basic-science research fields.

"A tremendous amount of money has gone to the Department of Energy, and the climate scientists feel that they have been left out," said Jack Dongarra, a computer scientist at the University of Tennessee who is one of the keepers of the computer speed ranking.

Fears of a decade ago that the United States might lose its lead in the race to build the world's fastest computers have largely vanished Indeed, dumping charges filed several years ago against the Japanese by the United States supercomputer maker Cray Research Corporation were dropped in May, and in return its Japanese rival, NEC, invested in Cray.

The most powerful Japanese machine is made by Hitachi and is a massively parallel computer — the type in which hundreds or thousands of processors are linked by a high-speed network It is ranked fifth and is the fastest nonmilitary supercomputer. Only 6 of the fastest 20 supercomputers are made by Japanese companies.

Indeed, the Japanese have increasingly been forced to turn to United States chip makers for computer processors in recent years And the direction of research has been sharply altered by the reality that advanced consumer products, and supercomputers, have the economics of scale to make new development commercially viable

This striking shift in advanced research and development from the top to the bottom of the computing industry is underscored by I.B.M.'s decision on where to invest in the future of computing power A contract with the Sony Corporation to build the processor and network design for a future generation of its Playstation video game system

I B M is spending more than $3 billion on a new chip factory in East Fishkill, N.Y., which will be used in part to build chips for entertainment and mobile computing applications beginning in 2003. The factory's cost dwarfs the $1 billion spent on the entire ASCI military supercomputer program.

As part of the Sony partnership, I.B.M. also set up a new design center recently in Austin, Tex., that is focused on building an entirely new computer architecture based on the company giant's most advanced chip building technologies.

"We're in the final phases of the commoditization of scaleable computing," said Larry Smarr, director of

---

## A warning that the U.S. is falling behind in some basic research.

---

the California Institute of Telecommunications and Information Technology at the University of California at San Diego "We're at the end of an S curve and the only technology that can survive is the one with the largest installed base, which means consumer electronics"

That is the world for which I.B.M is designing its future high-performance computers, according to Bijan Devan, vice president for technology and emerging products for the computer maker's microelectronics division.

"We're talking about hundreds of millions of devices for this new architecture," he said "The most advanced stuff is increasingly coming from consumer markets You can spend vast amounts of capital on things and spread it across hundreds of millions of units"

The computer maker is thinking of its new design as capable of being used in all sorts of devices, from hand-held and mobile units all the way up through the server market, Dr Devan said

Known inside the company as the Cell Project, the first new systems are intended to emerge in 2004 and will have clock speeds beginning at four gigahertz, more than twice the speed of today's fastest microprocessors.

Dr Devan said that a single four-processor device intended for the home would have a teraflop of computing power — a trillion mathematical operations a second. Such a device is likely to sell for several hundred dollars compared with the 8,192-processor ASCI White machine, which cost about $110 million and has computed up to 7 2 teraflops

The top 500 ranking of supercomputers is compiled twice a year by Hans Meuer of the University of Mannheim, Erich Strohmaier and Horst Simon of the National Energy Research Scientific Computing Center of the Department of Energy and Dr Dongarra of the University of Tennessee But power is becoming harder and harder to track

Recently the group has added a second list of "cluster" machines to help track new low-cost supercomputers that are made up of collections of stripped down PC-boards

But the computing world has moved beyond that as well. The traditional ranking system does little to track new types of distributed supercomputing platforms like the SETI @Home project, which at any one time will have several thousand processors spread across the Internet trying to locate signals from intelligent life beyond earth

The distributed Internet computing model will increasingly change the face of the computing world, according to Dr Devan I.B.M's new architecture will be modeled closely after the biological world; processors will be like cells that are connected to multiple additional computing cells by high-bandwidth computer networks.

"It will run your home entertainment center and a lot more," he said

Reproduced with permission of the copyright owner. Further reproduction prohibited without permission.

A New Twist Arises in Deal For Computer - Free Preview - The New York Times          Page 1 of 2

The New York Times                                **Archive**

NYTimes.com   Go to a Section                                    Welcome, jordangreen1 - Membe

E✹TRADE   SEARCH
FINANCIAL                      | NYT Since 1981 · | Search |            ▸ TimesSelect  FF

«Back To Results                    ┤ **TimesSelect Archive** ├

FREE PREVIEW  ✉ E-Mail This  |  Permissions

# A New Twist Arises in Deal For Computer

January 7, 1997, Tuesday                        *Please Note: Archive
By JOHN MARKOFF (NYT); Business/Financial Desk   articles do not include
Late Edition - Final, Section D, Page 1, Column 5, 972 words   photos, charts or graphics.
                                                More information.

**DISPLAYING FIRST 50 OF 972 WORDS** -No matter how
the bitter dumping lawsuit brought by Cray Research Inc. against a Japanese supercompu
maker is resolved, it appears now that Cray may end up a loser. The Federal weather
research center that had originally caused the dispute by deciding to buy a supercompute
from the NEC...

To read the rest of this archive article, upgrade to **TimesSelect** or **purchase as a single
article.**

### Purchase Single Article - $4.95          | Buy Now |

### Upgrade to TimesSelect - $7.95 per
month
Includes 100 articles from The Archive          | Buy Now |
(8¢ per article)

### Upgrade to TimesSelect - $49.95 per
year
Includes 1200 articles from The Archive          | Buy Now |
(4¢ per article)

**TimesSelect**

What is TimesSelec
**Home Delivery
subscribers.**
Upgrade to
TimesSelect for free
now
**Not a newspaper
subscriber?**
Start your 14 day fre
trial to TimesSelect
now.

**Related Searches:** COMPUTERS AND INFORMATION SYSTEMS;

| HOME PAGE | MY TIMES | TODAY'S PAPER | VIDEO | MOST POPULAR | TIMES TOPICS | | Welcome, jordangreen1 | Membe |

**The New York Times**
Friday, July 28, 2006

# Archives

| WORLD | U.S. | N.Y. / REGION | BUSINESS | TECHNOLOGY | SCIENCE | HEALTH | SPORTS | OPINION | ARTS |

AUTOS

PRINT

# INTERNATIONAL BUSINESS; Twist in Trade Ruling Involving Japan

SAVE

ARTICLE TOOLS
SPONSORED BY
LITTLE MISS
SUNSHINE

Published: December 24, 1998

A Federal court has ordered United States trade officials to reconsider their ruling that unfairly priced exports by Japanese supercomputer makers threatened to harm the Cray Research division of Silicon Graphics, a court official said today.

The International Trade Commission now has 90 days to re-examine its October 1997 finding, according to a decision reached last week by the New York-based Court of International Trade.

The commission's finding followed a final determination by the Commerce Department that both NEC and Fujitsu had sold their products on the United States market at prices well below fair market value.

With the I.T.C. ruling, the department then imposed duties on the Japanese exports that were intended to compensate for the damage.

If the I.T.C. now determines that Cray was not likely to be injured, the duties to prevent such underselling may have to be lifted.

Copyright 2006 The New York Times Company | Privacy Policy | Search | Corrections | XML | Help



**CRAY** THE SUPERCOMPUTER COMPANY

| HOME | HOW TO E

products      solutions      service & support      about cray      ir

Home > About Cray > Cray History

| | |
|---|---|
| Cray Vision | **Cray History** |
| Management Team | |
| Board of Directors | |
| News & Events | |
| Employment | |
| Cray User Group | |
| Cray History | |
| Legal Contracts & GSA Schedule | |
| Contact & Locations | |
| Media Resources | |

**Related Links**

Seymour Cray

Information

Cray Worldwide

## Cray History

Cray Inc., formed from the March 2000 merger of Tera Computer Company and Cray Research, is the global supercomputing leader.



Cray Inc. builds upon a rich history that extends back to 1972, when the legendary Seymour Cray, the "father of supercomputing," founded Cray Research. R&D and manufacturing were based in his hometown of Chippewa Falls, Wisconsin; business headquarters were in Minneapolis, Minnesota.

The first Cray-1™ system was installed at Los Alamos National Laboratory in 1976 for $8.8 million. It boasted a world-record speed of 160 million floating-point operations per second (160 megaflops) and an 8 megabyte (1 million word) main memory. The Cray-1's architecture reflected its designer's penchant for bridging technical hurdles with revolutionary ideas. In order to increase the speed of this system, the Cray-1 had a unique "C" shape which enabled integrated circuits to be closer together. No wire in the system was more than four feet long. To handle the intense heat generated by the computer, Cray developed an innovative refrigeration system using Freon.

In order to concentrate his efforts on design, Cray left the CEO position in 1980 and became an independent contractor. As he worked on the follow-on to the Cray-1, another group within the company developed the first multiprocessor supercomputer, the Cray X-MP™, which was introduced in 1982. The Cray-2™ system appeared in 1985, providing a tenfold increase in performance over the Cray-1.

In 1988, Cray Research introduced the Cray Y-MP®, the world's first supercomputer to sustain over 1 gigaflop on many applications. Multiple 333 MFLOPS processors powered the system to a record sustained speed of 2.3 gigaflops.

Always a visionary, Seymour Cray had been exploring the use of gallium arsenide in creating a semiconductor faster than silicon. However, the costs and complexities of this material made it difficult for the company to support both the Cray-3™ and the Cray C90™ development efforts. In 1989, Cray Research spun off the Cray-3 project into a separate company, Cray Computer Corporation, headed by Seymour Cray and based in Colorado Springs, Colorado. Tragically, Seymour Cray died of injuries suffered in an auto accident in September 1996 at the age of 71.

The 1990s brought a number of transforming events to Cray Research. The company continued its leadership in providing the most powerful supercomputers for production applications. The Cray C90™ featured a new central processor with industry-leading sustained performance of 1 gigaflop.

Using 16 of these powerful processors and 256 million words of central memory, the system boasted unrivaled total performance. The company also produced its first "mini-supercomputer," the Cray XMS™ system, followed by the Cray Y-MP EL™ series and the subsequent Cray J90™.

In 1993, Cray Research offered its first massively parallel processing (MPP) system, the Cray T3D™ supercomputer, and quickly captured MPP market leadership from early MPP companies such as Thinking Machines and MasPar. The Cray T3D proved to be exceptionally robust, reliable, sharable and easy-to-administer, compared with competing MPP systems.

Since its debut in 1995, the successor Cray T3E™ supercomputer has been the world's best selling MPP system. The Cray T3E-1200E™ system was the first supercomputer to sustain one teraflop (1 trillion calculations per second) on a real-world application. In November 1998, a joint scientific team from Oak Ridge National Laboratory, the National Energy Research Scientific Computing Center (NERSC), Pittsburgh Supercomputing Center and the University of Bristol (UK) ran a magnetism application at a sustained speed of 1.02 teraflops.

In another technological landmark, the Cray T90™ became the world's first wireless supercomputer when it was unveiled in 1994. Also introduced that year, the Cray J90 series has since become the world's most popular supercomputer, with over 400 systems sold.

Cray Research merged with SGI (Silicon Graphics, Inc.) in February 1996. In August 1999, SGI created a separate Cray Research business unit to focus exclusively on the unique requirements of high-end supercomputing customers. Assets of this business unit were sold to Tera Computer Company in March 2000.

Tera Computer Company was founded in 1987 in Washington, DC, and moved to Seattle, Washington, in 1988. Tera began software development for the Multithreaded Architecture (MTA) systems that year and hardware design commenced in 1991. The Cray MTA-2™ system provides scalable shared memory, in which every processor has equal access to every memory location, greatly simplifying programming because it eliminates concerns about the layout of memory.

The company completed its initial public offering in 1995 (TERA on the NASDAQ stock exchange), and soon after received its first order for the MTA from the San Diego Supercomputer Center. The multiprocessor system was accepted by the center in 1998, and has since been upgraded to eight processors.

Upon the merger with the Cray Research division of SGI in 2000, the company was renamed Cray Inc. and the ticker symbol was changed to CRAY.

In 2004, Cray Inc. acquired HPC startup OctigaBay Systems Corporation, a Canadian company developing a high performance computing (HPC) system designed around a direct-connect processor approach to massively parallel processing that directly links together processors, alleviating memory contention and interconnect bottlenecks found in cluster and SMP systems. Renamed the Cray XD1™ system, its innovative architecture embedded both a high speed interconnect as well as application accelerators to remove major bottlenecks and improve performance on real-world applications.

Copyright © 2006 Cray Inc.              Main Phone: 206-701-2000   Fax: 206-701-2500

Cray-4: Information From Answers.com                                    Page 1 of 3

Preferences
Go ▾
Answers
Web
Shopping
Images
News
Blogs

# Answers.com™    Cray-4

<u>Business</u>   <u>Entertainment</u>   <u>Games</u>   <u>Health</u>   <u>People</u>   <u>Places</u>   <u>Reference</u>
<u>Science</u>   <u>Shopping</u>   <u>Words</u>   <u>More...</u>

On this page:   Wikipedia

# Cray-4

Get this song now:
"Answers" As a free ringtone on your cell.
www.Free-Ringtones-4all.net

## Wikipedia

**Cray-4**
The Cray-4 was intended to be Cray Computer's successor to the failed Cray-3 and earlier Cray-2 supercomputers. The system Cray-3 was the first major application of gallium arsenide (GaAs) semiconductors in computing. The project was not considered a success, and only one Cray-3 was delivered. Seymour Cray moved on to the Cray-4 design, but the company went bankrupt before it was fully assembled. Cray Computer announced the Cray-4 supercomputer in 1994. The Cray-4 is based on a shared-memory, vector processing CPU.

The final packaging for the Cray-4 was intended to fit into 1 cubic foot ala the NeXT cube. It was a GaAs design with a 1 ns clock cycle (1 GHz). The local memory architecture used on the Cray-2 and Cray-3 was dropped returning to the mass of B- and T- registers owing to Seymour's lack of success using the local memory effectively. Parts of CPU prototypes exist. Marketing brouchures also exist.

This entry is from Wikipedia, the leading user-contributed encyclopedia. It may not have been reviewed by professional editors (see full disclaimer)

Donate to Wikimedia

Are You Normal?
A fun test to see how your personality compares to the rest!
www.chatterbean.com
Topic
Great deals on everything Topic themed.
eBay.com

⊕ Mentioned In

# EXHIBIT E

## (Affidavit of Service for Fourth Omnibus Objection)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
In re                                                 :
                                                      :        Chapter 11 Case No.
                                                      :
SILICON GRAPHICS, INC., *et al.*,                     :        06- 10977 (BRL )
                                                      :
                                Debtors.              :        (Jointly Administered)
                                                      :
------------------------------------------------------------------x

AFFIDAVIT OF MAILING

STATE OF NEW YORK                      )
                                       )  ss.:
COUNTY OF NEW YORK                     )

JULIA BEALLER, being duly sworn, deposes and says:

1.      I am over the age of eighteen years and employed by Bankruptcy Services LLC, 757 Third Avenue, New York, New York and I am not a party to the above-captioned action.

2.      On December 4, 2006, I caused to be served the following:

    a)      "Notice of Reorganized Debtors' Third Omnibus Objection to Reclamation Demands and Proofs of Claim Comprised of Reclamation Claims (Proofs of Claims Nos. 85, 223, 344, 347, 353, 452, 478, 636)", dated December 4, 2006, to which is attached the "Reorganized Debtors' Third Omnibus Objection to Reclamation Demands and Proofs of Claim Comprised of Reclamation Claims (Proofs of Claims Nos. 85, 223, 344, 347, 353, 452, 478, 636)", [Docket No. 755], dated December 4, 2006, (collectively the "3rd Omnibus Objection"), and

    b)      "Notice of Reorganized Debtors' Fourth Omnibus Objection to Proofs of Claims Comprised of (i) Duplicate Claims, (ii) Amended and Superseded Claims, (iii) No Record of Liability Claims, (iv) Overstated Claims, (v) Liabilities Already Paid, (vi) Claims to be Reduced and/or Reclassified, (vii) Equity-Based Claims, and (viii)Claims to be Reduced and Classified Against Different Debtor", dated December 4, 2006, to which is attached the "Reorganized Debtors' Fourth Omnibus Objection to Proofs of Claims Comprised of (i) Duplicate Claims, (ii) Amended and Superseded Claims, (iii) No Record of Liability Claims, (iv) Overstated Claims, (v) Liabilities Already Paid, (vi) Claims to be Reduced and/or Reclassified, (vii) Equity-Based Claims, and Claims to be Reduced and Classified Against Different Debtor", [Docket No. 756], dated December 4, 2006, (collectively the "4th Omnibus Objection"),

by causing true and correct copies, to be delivered by as follows:

        i)      the 3rd Omnibus Objection, enclosed securely in separate postage pre-paid envelopes, to be delivered by first class mail to those parties listed on the annexed Exhibit "A",

        ii)     the 4th Omnibus Objection, enclosed securely in separate postage pre-paid envelopes, to be delivered by first class mail to those parties listed on the annexed Exhibit "B",

iii)        the 3rd Omnibus Objection and the 4th Omnibus Objection , enclosed securely in separate postage pre-paid envelopes, to be delivered by first class mail to those parties listed on the annexed Exhibit "C", and

iv)        the 3rd Omnibus Objection and the 4th Omnibus Objection , enclosed securely in separate postage pre-paid envelopes, to be delivered by overnight mail to those parties listed on the annexed Exhibit "D".

3.        All items served by mail or overnight courier included the following legend affixed on the envelope: "LEGAL DOCUMENTS ENCLOSED: PLEASE DIRECT TO ATTENTION OF ADDRESSEE, PRESIDENT OR LEGAL DEPARTMENT."

_____
Julia Bealler

Sworn to before me this

15th day of December, 2006

_____
Notary Public

ROSS MATRAY
Notary Public, State of New York
No. 01MA614899
Qualified in New York County
Commission Expires July 3, 2010

Date: 12/4/2006  Time: 17:15:25

| Silicon Graphics Inc. | Fourth Omnibus Objection | Creditor Listing 12/4/2006 |
|---|---|---|

| Name | Address |
|---|---|
| ALAMEDA COUNTY TAX COLLECTOR | 1221 OAK ST OAKLAND,CA 94612 |
| BANC OF AMERICA LEASING & CAPITAL LLC | ATTN GLOBAL VENDOR FINANCE LEGAL DEPT 231 S LASALLE ST 16TH FL MAILSTOP M/S ILI-231-16-58 CHICAGO,IL 60604 |
| BISHOP, ROBERT | ATTN CARREN SHULMAN C/O HELLER EHRMAN LLP 7 TIMES SQUARE NEW YORK,NY 10036-6524 |
| CAREER BUILDER LLC | 13047 COLLECTION CENTER DR CHICAGO,IL 60693-0130 |
| CITY OF BELLEVUE | PO BOX 90012 BELLEVUE,WA 98009 |
| CITY OF CAMBRIDGE | LAW DEPARTMENT - CITY HALL 795 MASSACHUSETTS AVE CAMBRIDGE,MA 02139 |
| CITY OF LOS ANGELES | OFFICE OF FINANCE/TAX & PERMIT 201 N MAIN ST 101CITY HALL LOS ANGELES,CA 90012 |
| CITY OF NEW YORK DEPARTMENT OF FINANCE | RON MEDLEY OF COUNSEL 345 ADAMS ST 3RD FL BROOKLYN,NY 11201 |
| CITY OF PHILADELPHIA | C/O MORTON R BRANZBURG ESQ LEHR HARRISON HARVEY BRANZBURG & ELLERZ LLP 260 S BROAD ST PHILADEPIHA,PA 19102 |
| COMMONWEALTH OF MASSACHUSETTS | DEPARTMENT OF REVENUE ATTN: WILLIAM F CONNOR, SUPERVISOR BANKRUPTCY UNIT, MDOR PO BOX 9564 BOSTON,MA 02114 |
| COMMONWEALTH OF MASSACHUSETTS DEPARTMENT OF REVENUE | ANNE CHAN TAX EXAMINER BANKRUPTCY UNIT PO BOX 9564 BOSTON,MA 02114-9564 |
| COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF REVENUE | BUREAU OF COMPLIANCE PO BOX 260946 HARRISBURG,PA 17128-0946 |
| CONNECTICUT DEPARTMENT OF REVENUE SERVICES | C&E DIVISION BANKRUPTCY SECTION 25 SIGOURNEY ST HARTFORD,CT 06106-5032 |
| CONNECTICUT DEPARTMENT OF REVENUE SERVICES | C&E DIVISION BANKRUPTCY SECTION ATTN: ANA BOX, REVENUE AGENT II 25 SIGOURNEY ST HARTFORD,CT 06106-5032 |
| DEPARTMENT OF THE TREASURY | INTERNAL REVENUE SERVICE ATTN: SANDRA FELIU, BNKR SPEC 290 BROADWAY 5TH FL NEW YORK,NY 10007 |
| DICE.COM | ED BATES, CORP ACCT RESOLUTION SPECIALIST 4101 NW URBANDALE DRIVE URBANDALE,IA 50322 |
| ELECTRONIC DATA SYSTEMS CORPORATION. | EDS INFORMATION SERVICES LLC RISHELLE MCKOWN 5400 LEGACY DR H3-3A-05 PLANO,TX 75024 |
| EPOKA GROUP A/S | HJULMAGERVEJ 21 PANDRUP DK-9490 DENMARK |
| EPOKA GROUP A/S | ATTN GARY T HOLTZGER WEIL GOTSHAL & MANGES LLP 767 FIFTH AVE NEW YORK,NY 10153-0119 |
| FLEET BUSINESS CREDIT LLC, | NOW KNOWN AS BAL GLOBAL FINANCE LLC ATTN GLOBAL VENDOR FINANCE LEGAL DEPT 231 S LASALLE STREET, 16TH FL MAILSTOP M/S IL1-231-16-58 CHICAGO,IL 60604 |
| GEORGIA, DEPARTMENT OF REVENUE | ATTN: ACIE MCGHEE COMPLIANCE DIV-BANKRUPTCY SECT PO BOX 161108 ATLANTA,GA 30321-1108 |
| GREENBERG TURNER | ATTN: DAVID TURNER, PARTNER 401 BAY ST STE 3000 TORONTO,ON M5H 2Y4 CANADA |
| HARRIS COUNTY/CITY OF HOUSTON | JOHN P DILLMAN LINEBARGER GOGGAN BLAIR & SAMPSON LLP PO BOX 3064 HOUSTON,TX 77253-3064 |
| HITACHI DATA SYSTEMS CREDIT CORP. | ATTN SANDRA LECONTI MS 34 - 42 750 CENTRAL EXPY SANTA CLARA,CA 95050 |
| HITACHI DATA SYSTEMS, CORP. | ATTN SANDRA LECONTE - MS 34 - 42 750 CENTRAL EXPY SANTA CLARA,CA 95050 |
| HOUSTON ISD | JOHN P DILLMAN LINEBARGER GOGGAN BLAIR & SAMPSON LLP PO BOX 3064 HOUSTON,TX 77253-3064 |
| IKON FINANCIAL SERVICES | BANKRUPTCY ADMINISTRATION PO BOX 13708 MACON,GA 31208 |
| IKON OFFICE SOLUTIONS | ATTN BANKRUPTCY TEAM ACCOUNTS RECEIVABLE-CTR 3920 ARKWRIGHT RD STE 400 MACON,GA 31210 |
| ILLINOIS DEPARTMENT OF EMPLOYMENT SECURITY | 33 S STATE ST CHICAGO,IL 60603 |
| ILLINOIS DEPARTMENT OF REVENUE | KEVIN HARLOWE 100 W RANDOLPH LEVEL 7-425 CHICAGO,IL 60601 |
| JVC AMERICAS CORP. | JVC PROFESSIONAL PRODUCTS COMPANY ATTN LEGAL DEPARTMENT 1700 VALLEY RD WAYNE,NJ 7470 |
| KANAHELE, DAVID | 2313 HARRIMAN LN REDONDO BEACH,CA 90278-4425 |
| KUNTZ, WILLIAM | C/ANSELL 25 ALPRUIA FARM RD HOPKINTON,MA 01748 |
| LAKEHEAD UNIVERSITY | RITA BLAIS, CONTROLLER 955 OLIVER RD THUNDER BAY,ON P7B 5E1 CANADA |
| MADISON COUNTY | LYNDA HALL TAX COLLECTOR 100 NORTHSIDE SQUARE HUNTSVILLE,AL 35801 |
| MISSISSIPPI STATE TAX COMMISSION | BANKRUPTCY SECTION PO BOX 22808 JACKSON,MS 39225-2808 |
| MISSOURI DEPARTMENT OF REVENUE | PO BOX 475 JEFFERSON,MO 65105 |
| NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE | BANKRUPTCY SECTION PO BOX 5300 ALBANY,NY 12205-0300 |
| NORTHERN STATES POWER COMPANY, A WISCONSIN CORP., | D/B/A XCEL ENERGY KATIE A MILLER, COLLECTION ANALYST PO BOX 727 LA CROSSE,WI 54602-0727 |
| OAKLAND COUNTY TREASURER | 1200 N TELEGRAPH PONTIAC,MI 48341 |
| OREGON DEPARTMENT OF REVENUE | REVENUE BLDG 955 CENTER ST NE SALEM,OR 97301-2555 |
| OTR-MCC LLC | ATTN RICHARD J BERNARD BAKER & HOSTETLER LLP 666 FIFTH AVE NEW YORK,NY 10103 |
| OTR-MCC LLC | CB RICHARD ELLIS INC ATTN KIM STIRBA-REYNOLDS ASSET SERVICES 300 INTERPACE PKWY PARSIPPANY,NJ 07054 |
| PENNSYLVANIA DEPARTMENT OF REVENUE | BUREAU OF COMPLIANCE PO BOX 280946 HARRISBURG,PA 17128-0946 |
| PENNSYLVANIA DEPARTMENT OF REVENUE | BANKRUPTCY DIVISION PO BOX 280946 HARRISBURG,PA 17128-0946 |
| PENNSYLVANIA DEPARTMENT OF REVENUE | BANKRUPTCY DIVISION ATTN: ECLEMUS WRIGHT JR, CHIEF PO BOX 280946 HARRISBURG, PA 17128-0946 |
| PMA GROUP, THE | Kaylene Green 2345 CRYSTAL DR # 300 ARLINGTON,VA 22202-4810 |
| PMA GROUP, THE | Carmen A Jacobs, PC 601 King St, Suite 400 Alexandria,VA 22314 |
| RABA COREFOUNDRY, LLC | 8830 STANFORD BLVD, SUITE 205 COLUMBIA,MD 21045 |
| RHYNES, VINCENT E. | 1514 W MANCHESTER AVE # 5 LOS ANGELES,CA 90047 |
| SACRAMENTO COUNTY TAX COLLECTOR | ATTN BANKRUPTCY 700 H ST RM 1710 SACRAMENTO,CA 95814 |
| SCA PACKAGING NORTH AMERICA, INC. | C/O BRUCE S NATHAN LOWENSTEIN SANDLER PC 1251 AVENUE OF THE AMERICAS NEW YORK,NY 10020 |
| SHOOT DIGITAL | VIRGINIA JOHNSON 23 E 4TH ST NEW YORK,NY 10003 |

# EXHIBIT F

## (Fourth Omnibus Order)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————x
In re                                          :
                                               :        Chapter 11 Case No.
                                               :
SILICON GRAPHICS, INC., *et al.*,              :        06-10977 (BRL)
                                               :
            Debtors.                           :        (Jointly Administered)
                                               :
———————————————————————x

### ORDER GRANTING REORGANIZED DEBTORS' FOURTH OMNIBUS OBJECTION TO PROOFS OF CLAIMS COMPRISED OF (i) DUPLICATE CLAIMS, (ii) AMENDED AND SUPERSEDED CLAIMS, (iii) CLAIMS NOT REFLECTED IN THE DEBTORS' BOOKS AND RECORDS, (iv) OVERSTATED CLAIMS, (v) LIABILITIES ALREADY PAID, (vi) CLAIMS TO BE REDUCED AND/OR RECLASSIFIED, (vii) EQUITY-BASED CLAIMS, AND (viii) CLAIMS TO BE REDUCED AND/OR RECLASSIFIED AGAINST DIFFERENT DEBTOR

Upon the Fourth Omnibus Objection to Proofs of Claim, dated December 4, 2006

(the "Objection"), of Silicon Graphics, Inc. and certain of its direct and indirect subsidiaries, as

debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the

"Debtors" and as reorganized, the "Reorganized Debtors"), to certain proofs of claim comprised

of (i) duplicate claims, (ii) amended and superseded claims, (iii) claims not reflected in the

Debtors' books and records, (iv) overstated claims, (v) liabilities already paid, (vi) claims to be

reduced and/or reclassified, (vii) equity-based claims, and (viii) claims to be reduced and/or

reclassified against different Debtor; and the Court having jurisdiction to consider the Objection

and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the

Objection and the relief requested therein being a core proceeding pursuant to 28 U.S.C.

§ 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and

due and proper notice of the Objection having been provided to (i) the Office of the United

States Trustee for the Southern District of New York, (ii) counsel to Wells Fargo Foothill, Inc.,

the agent for the Debtors' prepetition secured lenders, (iii) counsel to the *ad hoc* committee of

secured noteholders, (iv) counsel to U.S. Bank National Association, indenture trustee for the

Debtors' secured noteholders, (v) counsel to JPMorgan Chase Bank, indenture trustee for the

holders of the Debtors' unsecured debentures, (vi) counsel to the official committee of unsecured

creditors, (vii) counsel to Morgan Stanley Senior Funding, Inc., the agent for the Debtors'

postpetition credit facility, (viii) each person or entity that filed the proofs of claim in the

Exhibits to the Objection, and (ix) those parties entitled to notice pursuant to this Court's order,

dated May 31, 2006, establishing notice procedures in these chapter 11 cases; and it appearing

that no other or further notice need be provided; and the Court having determined that the relief

sought in the Objection is in the best interests of the Debtors, their estates and all parties in

interest; and the Court having determined that the legal and factual bases set forth in the

Objection establish cause for the relief granted herein; and after due deliberation and sufficient

cause appearing therefor, it is hereby

ORDERED that the Objection is granted as set forth herein; and it is further

ORDERED that, pursuant to section 502 of title 11 of the United States Code (the

"Bankruptcy Code"), the proofs of claim identified as a "Duplicate Claim To Be Expunged" on Exhibit

A annexed hereto are disallowed and expunged in their entirety; and it is further

ORDERED that, pursuant to section 502 of the Bankruptcy Code, each proof of claim

identified as an "Amended and Superseded Claim To Be Expunged" on Exhibit B annexed hereto is

disallowed and expunged in its entirety; and it is further

ORDERED that, pursuant to section 502 of the Bankruptcy Code, each proof of claim

identified as a "Claim To Be Expunged" on Exhibit C an annexed hereto is disallowed and expunged in

its entirety; and it is further

ORDERED that, pursuant to section 502 of the Bankruptcy Code, each proof of claim identified as a "Claim To Be Reduced" on Exhibit D annexed hereto is reduced to the amount set forth on Exhibit D in the row titled "Reduced Claim"; and it is further

ORDERED that, pursuant to section 502 of the Bankruptcy Code, each proof of claim identified as a "Claim To Be Expunged" on Exhibit E annexed hereto is disallowed and expunged in its entirety; and it is further

ORDERED that, pursuant to section 502 of the Bankruptcy Code, each proof of claim identified as a "Claim To Be Reduced and/or Reclassified" on Exhibit F annexed hereto is reduced and/or reclassified as provided in the row titled "Reduced and/or Reclassed Claim"; and it is further

ORDERED that, pursuant to section 502 of the Bankruptcy Code, each proof of claim identified as a "Claim To Be Expunged" on Exhibit G annexed hereto is disallowed and expunged in its entirety; and it is further

ORDERED that, pursuant to section 502 of the Bankruptcy Code, each proof of claim identified as "Claim To Be Reduced and/or Reclassified Against Different Debtor" on Exhibit H annexed hereto is reduced and/or reclassified as provided in the row titled "Reduced and/or Reclassed Claim"; and it is further

ORDERED that nothing in this Order shall be construed as or in any way constitute a waiver of the Reorganized Debtors' right to assert any objections to any claims or proofs of claim, including those identified on Exhibits A through H annexed hereto, on any ground whatsoever and all such rights are reserved and preserved; and it is further

ORDERED that the requirement pursuant to Rule 9013-1(b) of the Local

Bankruptcy Rules for the Southern District of New York that the Reorganized Debtors file a

separate memorandum of law in support of the Motion is deemed satisfied.

Dated:  January 9, 2007
        New York, New York

/s/Burton R. Lifland
UNITED STATES BANKRUPTCY JUDGE

Exhibit C
No Record of Liability

In re: Silicon Graphics, Inc. et al.
Case No. 06-10977 (BRL)

4th Omnibus

| | Claim # | Date Filed | Debtor | Name of Claimant | Secured | Administrative | Priority | Unsecured | Total |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | Asserted | | |
| Claim To Be Expunged | 5 | 5/22/2006 | Silicon Graphics Federal, Inc. | NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE | $0.00 | $0.00 | $9.24 | $150.00 | $159.24 |
| Claim To Be Expunged | 14 | 5/30/2006 | Silicon Graphics, Inc. | OAKLAND COUNTY TREASURER | $0.00 | $287.43 | $0.00 | $0.00 | $287.43 |
| Claim To Be Expunged | 206 | 7/21/2006 | Silicon Graphics, Inc. | HOUSTON ISD | $3,819.63 | $0.00 | $0.00 | $0.00 | $3,819.63 |
| Claim To Be Expunged | 208 | 5/26/2006 | Silicon Graphics, Inc. | HARRIS COUNTY/CITY OF HOUSTON | $3,276.25 | $0.00 | $0.00 | $0.00 | $3,276.25 |
| Claim To Be Expunged | 233 | 7/21/2006 | Silicon Graphics, Inc. | GEORGIA, DEPARTMENT OF REVENUE | $0.00 | $0.00 | $2,002.99 | $138.52 | $2,141.51 |
| Claim To Be Expunged | 393 | 8/1/2006 | Silicon Graphics, Inc. | ILLINOIS DEPARTMENT OF EMPLOYMENT SECURITY | $0.00 | $0.00 | $155.75 | $0.00 | $155.75 |
| Claim To Be Expunged | 515 | 8/3/2006 | Silicon Graphics, Inc. | MADISON COUNTY | $0.00 | $0.00 | $2,291.00 | $0.00 | $2,291.00 |
| Claim To Be Expunged | 668 | 8/7/2006 | Silicon Graphics, Inc. | SHOOT DIGITAL | $0.00 | $0.00 | $0.00 | $5,172.00 | $5,172.00 |
| Claim To Be Expunged | 698 | 8/14/2006 | Silicon Graphics Federal, Inc. | PENNSYLVANIA DEPARTMENT OF REVENUE | $0.00 | $0.00 | $322.26 | $26.00 | $348.26 |
| Claim To Be Expunged | 767 | 9/12/2006 | Silicon Graphics, Inc. | CITY OF PHILADELPHIA | $0.00 | $0.00 | $0.00 | $233.19 | $233.19 |
| Claim To Be Expunged | 771 | 9/18/2006 | Silicon Graphics Federal, Inc. | MISSISSIPPI STATE TAX COMMISSION | $0.00 | $0.00 | $897.00 | $89.70 | $986.70 |
| Claim To Be Expunged | 775 | 9/25/2006 | Silicon Graphics, Inc. | CITY OF CAMBRIDGE | $0.00 | $0.00 | $1,356.86 | $0.00 | $1,356.86 |
| Claim To Be Expunged | 776 | 9/25/2006 | Silicon Graphics, Inc. | CITY OF LOS ANGELES | $0.00 | $0.00 | $129,535.02 | $0.00 | $129,535.02 |
| Claim To Be Expunged | 784 | 10/3/2006 | Silicon Graphics Federal, Inc. | MISSISSIPPI STATE TAX COMMISSION | $0.00 | $0.00 | $897.00 | $89.70 | $986.70 |
| Claim To Be Expunged | 792 | 8/2/2006 | Cray Research, L.L.C. | KUNTZ, WILLIAM | $0.00 | $0.00 | $0.00 | $892,000.00 | $892,000.00 |

Page 1 of 2

10/4/2007 11:52:35 AM

## Exhibit C
## No Record of Liability

In re: Silicon Graphics, Inc. et al.
Case No. 06-10977 (BRL)

4th Omnibus

| Claim # | Date Filed | Debtor | Name of Claimant | Asserted | | | | Total |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | Secured | Administrative | Priority | Unsecured | |
| 801 | 10/16/2006 | Silicon Graphics, Inc. | PENNSYLVANIA DEPARTMENT OF REVENUE | $0.00 | $0.00 | $171.00 | $0.00 | $171.00 |
| | | | Claim To Be Expunged | | | | | |
| 812 | 10/27/2006 | Silicon Graphics, Inc. | U.S. CUSTOMS AND BORDER PROTECTION | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | | | Claim To Be Expunged | | | | | |
| 816 | 11/1/2006 | Silicon Graphics, Inc. | CITY OF BELLEVUE | $0.00 | $0.00 | $52,433.66 | $0.00 | $52,433.66 |
| | | | Claim To Be Expunged | | | | | |

11/4/2007 11:52:42 AM